Curia, per

O’Neall, J.
It is true, that the Court of Errors, in the State vs. McBride, (Rice, 400,) held that the Court had no jurisdiction over the offence of stealing a letter from the mail, and reversed the case of the State vs. Wells, (2 Hill, 687); but, in so holding, it was not intended to disclaim jurisdiction of cases where the rights of parties, civiliter, were concerned.
The plaintiffs here claim for an injury done to them by an officer of the United States, in the discharge of his duties, or rather in failing to properly discharge them. Is there any thing in the Constitution or laws of the United States which forbids our *150 Courts from trying such a case ? Certainly not. Indeed the right to hear, try and determine such a matter is a part of the common law jurisdiction of the Courts of Law of South Carolina, and unless in the Constitution of the United States it had been surrendered, it still remains.
The Court, in Bolán vs. Williamson & Chapman, (2 Bay, 551,) better reported in 1 Brer. 181, held jurisdiction of such a case as indisputable. So in Franklin vs. Low & Swartout (1 Johns. R. 396) a similar jurisdiction was exercised. It cannot be necessary to pursue this further.
The next question is, whether the declaration is sufficient. The first count charges that the loss was sustained “ through the negligence, carelessness and default of the post master, his servants, agents or deputiesthe second count charges the loss to have occurred from the defendant not properly superintending his clerks or agents.
I think either count sufficient. The first charges the defendant generally with negligence in the discharge of the duties of his office; and that the plaintrffs’s loss arose therefrom. This is clearly sufficient, if Ward, his assistant, is to be regarded as his mere servant, (1 Chitty’s Plead. 382.) That this is the true notion, is apparent when it is remembered that the defendant was the only person legally known as post master at Edgefield. The 51st regulation of the post office declares, that he shall not be permitted to transfer the charge of his office and the performance of its duties to another.
The 53d regulation provides “ that the duties of his office must be performed only by himself personally, or by a sworn assistant, or assistants, whom he may employ to aid him, when necessary; for the care and attention of every one of whom he will be responsible to the Department.” These regulations shew very plainly that his assistant is no officer of the Government, and that he is responsible for every thing as done by himself.
It is true, however, the case of Dunlop vs. Munroe, (7 Cranch, 242, 269) does sanction the doctrine, that to charge the post master for the neglect of his assistants, it is necessary to state the *151 injury according to the facts, and that the post master’s liability will then result from his own neglect in not properly superintending the discharge of the duties of his office. This view of the law is met by the 2d count, and the defendant has therefore no ground to complain.
The next question is, was the defendant liable for the negligence of his assistant, Ward 1 That he was, is, I think clear on principle.
The 53d regulation, above cited, shews that Ward was the mere employee of the defendant; he is in no sense a public officer. There is no plainer doctrine of the common law, than that the principal, 'who holds out an agent or servant, in any public employment, is liable, in ease, for his negligence. Drayton vs. Moore, Parker & Co. vs. Gordon, (Dudley, 271-2-3-4.)
The same result is attained against a post master, by Bolan vs. Williamson & Chapman, (1 Brev. 181,) for in that case the Court held that the post Master was liable for a loss occasioned by negligence in his office ; that his assistant was not liable to the party sustaining the loss, unless he is an officer of the Department. It is clear, from the post office regulations, that he is not such officer, and it therefore clearly follows, from that case, the post master is liable. Judge Brevard gives the true point of that decision, to wit, the verdict against the post master and his assistant could not be sustained, as both were not liable. The Court did not do what it might have done, and held the verdict to have been good against the post master alone, and permitted the plaintiff to discontinue as to his assistant.
But this case, when properly understood, removes all difficulty; the post master is sought to be charged for negligence in his assistant, whereby the plaintiffs’s money was stolen. The 61st regulation provides “ that a post master will suffer no person whatever, except his duly sworn assistants, or clerks and letter carriers, who may also have been sworn, to have access to the letters, newspapers, and packets in his office, or whatever constitutes a part of the mail, or to the mail keys.” Meigs, the unfortunate guilty man, who forfeited all the good results of a previous *152 well spent life, by yielding to the temptation presented to him, in his dying condition, to provide for his family, by taking that which did not belong to him, had “ access to the letters, newspapers, and packets” in the post office, and thereby stole the money of the plaintiifs. This was by the neglect of Ward; he ought not to have permitted it; and the defendant having “ in person the general superintendance of his office,” as required by the 52d regulation, ought to have corrected this very matter, and hence, in the very terms of the 2d count, he is liable. It follows, too, that the negligence of his assistant, is his negligence, and therefore his liability arose as the Judge stated it to the jury.
From this view of the defendant’s liability, which arises from. Ward’s act, it follows, that he was an incompetent witness for the defendant. For he is liable over to the defendant. Parker & Co. vs. Gordon (Dud. 272.)
The only remaining question is, whether Meigs’s admission, that he stole the letter containing the money, was competent. I placed its admission on two grounds : 1st, that the defendant was present, heard it, and received it as true: and, 2d, that it was the admission of an act, committed by the party making it, against his interest, and subjecting him to infamy and heavy penal consequences, and who was dead at the trial.
In either or both of these points of view, I think the evidence was admissible, but more especially when both are combined.
It is true that the defendant had no knowledge of the act, and cannot, therefore, from his presence and silence, be presumed to have admitted it to be true, because he knew it to be so. But this is not necessary to make it evidence, on that account. lie was one of those seeking for the truth, and the ascertainment of which was very important to him. When, therefore, Meigs made the confession, and he received and acted on it as true, which he did, he cannot afterwards be allowed to say it is no evidence against me. It is, as to him, prima facie evidence of the fact. He could relieve himself of its effect by shewing that, in fact, Meigs was not the guilty man, or that he received it as true, by mistake. But, on the second ground, I think it is true that a *153 declaration, made by the party who does the act, as in this case stealing the letter containing the money, is admissible. It is very true that the rule that, where an entry or declaration, made by a deceased person, is against the interest of the party making it, it is admissible as evidence, was qualified by Gilchrist & King vs. Martin & West, (Bail. Eq. 492,) and was restricted to cases where there was no interest to falsify the fact that it was made against the interest of the person making it, and that the entry or declaration was so ancient as to preclude suspicion that it was manufactured for the occasion. Under it alone, therefore, this declaration would not be admissible. But when it is remembered that this is not of a matter of business, like those spoken of in that case, but was a criminal act, of which none could be so cognizant as the party, I think a reason will be found for its admission, arising out of the rule, as qualified in the case just alluded to. The admission of such testimony arises from necessity, and the certainty that it is true, from the want of motive to falsify. Both these are apparent here.
In the Lessee of Clymer vs. Littler, (1 W. B. 345,) it is stated by the reporter, as a principle of the case, that a confession, by a deceased witness, that he forged the will of ’45, may be admissible. This is the very case before us. Yet it seems that the evidence was received, without objection, on the circuit: the objection was taken on the motion for new trial. Lord Mansfield said, “As to the fact, the admissibility or competence must result from the particular circumstances of the case.” He states those circumstances which shew that the deceased had no interest to state an untruth, and therefore he says, “I think it admissible.” So here we have every guaranty of its truthfulness — the grave consequences of infamy, and, at the least, ten years’ imprisonment, would certainly insuie the truth of the speaker. To this let it be added that the defendant was present, and received it as true, and do we not stand on at least as certain grounds as Lord Mansfield assumed to be sufficient on that occasion ?
The motions for a nonsuit or new trial are dismissed.
Frost, Withers and Whitner, JJ., concurred.